■ MICHAEL KHALIL, Respondent, v LAWRENCE GUARDINO, Defendant and Third-Party Plaintiff-Respondent-Appellant, and COUNTY OF NASSAU et al., Appellants-Respondents. (Action No. 1.) ESTATE OF KIMBERLY SPRINDYS, Deceased, Respondent, v LAWRENCE GUARDINO, Respondent-Appellant, and COUNTY OF NASSAU et al., Appellants-Respondents. (Action No. 2.) [751 NYS2d 518] —In two related actions, inter alia, to recover damages for wrongful death, the County of Nassau and the Nassau County Police Department, the defendants third-party defendants in Action No. 1 and defendants in Action No. 2, appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Joseph, J.), dated November 19, 2001, as denied their motion for summary judgment dismissing the complaints, the third-party complaint, and all cross claims insofar as asserted against them, and Lawrence Guardino, the defendant third-party plaintiff in Action No. 1 and a defendant in Action No. 2, cross-appeals, as limited by his brief, from so much of the same order as denied his motion for summary judgment dismissing the complaints and all cross claims insofar as asserted against him.

Ordered that the order is modified, on the law, by deleting the provision thereof denying the motion of the County of Nassau and Nassau County Police Department for summary judgment dismissing the complaints, third-party complaint, and all cross claims insofar as asserted against them and substituting therefor a provision granting that motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, and the actions against the remaining defendant are severed; and it is further,

Ordered that one bill of costs is awarded to the County of

Nassau and the Nassau County Police Department, payable by Lawrence Guardino.

These actions arose from the death of two young women (hereinafter the decedents) who were struck by a Long Island Rail Road (hereinafter LIRR) train. The decedents were both romantically involved with Lawrence Guardino, the defendant third-party plaintiff in Action No. 1 and a defendant in Action No. 2. The decedents confronted Guardino at a diner across the street from the LIRR Wantagh train station, where they argued with him about his romantic involvement with them.

Guardino left the diner and entered the LIRR Wantagh train station and walked onto the top of the train platform, where the decedents followed him. Guardino then walked approximately 200 to 250 feet to the end of the platform and down onto the track area. The decedents, who allegedly feared that Guardino was trying to commit suicide, continued to follow him. After walking to the edge of the track area, with the decedents in pursuit, Guardino jumped approximately 8 to 12 feet from a retaining wall down onto the street, where he landed in front of Police Officer Joseph Lynch (hereinafter Lynch). Lynch was employed by the Nassau County Police Department, a defendant third-party defendant in Action No. 1 and a defendant in Action No. 2, and was on routine patrol.

Thereafter, one or both of the decedents, who were standing at the top of the retaining wall, shouted to Lynch that Guardino was trying to commit suicide by jumping in front of a car or truck on Sunrise Highway. The decedents also shouted to Lynch that they had prevented Guardino from committing suicide on the track area. Lynch then pursued and detained Guardino before he reached Sunrise Highway. A short time later, a train struck and killed the decedents. There was evidence that Guardino had previously expressed suicidal tendencies to one of the decedents on three separate occasions.

Lynch testified at his deposition that he instructed the decedents to "stay there, not to go on the tracks, stay off the tracks." However, Guardino indicated at his deposition that Lynch told the decedents "[y]ou're not supposed to be up there, you have to get down, go back the way you came" and that the decedents began to walk eastbound.

The plaintiffs commenced these actions against Guardino, and the County of Nassau and the Nassau County Police Department (hereinafter collectively referred to as the County). Guardino and the County separately moved for summary judgment and the Supreme Court denied the motions.

A municipality may be held liable for its negligent failure to

provide police protection only upon the existence of a special relationship between the municipality and the injured party (*see Mastroianni v County of Suffolk,* 91 NY2d 198; *Cuffy v City of New York,* 69 NY2d 255; *Basher v City of New York,* 268 AD2d 546; *Bernardo v City of Mount Vernon,* 259 AD2d 574).

The elements of a special relationship are: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Cuffy v City of New York, supra* at 260).

The record indicates that Lynch did not make any promise to the decedents that he would affirmatively protect them from any harm or danger. Assuming that Lynch may have told the decedents to get off the tracks, this statement did not constitute any promise of safety. In addition, there is no evidence that the decedents believed that any statement made by Lynch was a promise of safety, or that they relied and acted upon such statement. Accordingly, the Supreme Court erred in denying the County's motion for summary judgment, as there was no evidence of a special relationship between Lynch and the decedents.

However, the Supreme Court properly concluded that there is a triable issue of fact as to whether the doctrine that "danger invites rescue" is applicable, in denying Guardino's motion for summary judgment. The danger invites rescue doctrine creates a duty of care towards a potential rescuer where the culpable party has placed himself in an imminently perilous situation which invites rescue (*see Provenzo v Sam,* 23 NY2d 256, 260; *Ha-Sidi v South Country Cent. School Dist.,* 148 AD2d 580). Although Guardino contends that he was safe after he jumped onto the street, it is for the jury to determine whether the decedents reasonably believed that he was still in peril (*see Provenzo v Sam, supra*).

Guardino's remaining contention is without merit. S. Miller, J.P., Krausman, Luciano and Cozier, JJ., concur.